**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DATA HEALTH PARTNERS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TELADOC HEALTH, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 23-cv-160-RGA <br><br> **JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

1. Data Health Partners, Inc. ("Data Health") brings this action to enforce its intellectual property rights in ground-breaking technology. The three U.S. Patents Data Health asserts against Teladoc Health, Inc. ("Teladoc") claim important advances in the field of behavioral science. They culminated from years of hands-on experimentation and research at a private not-for-profit behavioral health organization that provides a continuum of services to individuals with intellectual, developmental, and behavioral needs. Executives at the Grafton School developed a novel patient-care approach involving a patient-specific iterative process of goal creation, multimodal data collection, data analysis, and multimodal intervention. The Grafton approach resulted in far greater adherence to goal regimens and better patient outcomes. The inventors then built a platform for applying their new process to other settings, both within and outside of healthcare settings, where actors sought to improve measurable outcomes through behavioral changes. And they patented that technology.

2. In September 2014, Livongo Health, Inc. ("Livongo") "unveil[ed] [a] unique platform to combine cloud-based analytics with the first FDA-cleared interactive blood glucose

meter."[1] Livongo attracted significant private funding from investors. These included $10 million in Series A funding from General Catalyst Partners and $20 million in Series B funding from investors including Kleiner Perkins Caufield & Byers.[2] Livongo's investors highlighted the platform's "ability to collect real-time biometric data, analyze it in the cloud and instantly push down guidance and support to the user."[3] In 2020, Teladoc bought Livongo in a merger valuing Livongo at $18.5 billion.[4]

3.  Livongo's flagship diabetes treatment platform has created significant health benefits for its users and significant financial benefit for Teladoc. But its success relies on Data Health's patented technology. Data Health therefore brings this action for fair compensation in the form of financial damages.

## PARTIES

4.  Plaintiff Data Health is a Delaware corporation with its principal place of business at 8549 Wilshire Boulevard, Suite 2403, Beverly Hills, CA 90211.

5.  Defendant Teladoc is a Delaware corporation with its principal place of business at 2 Manhattanville Road. Purchase, NY 10577. Teladoc has appeared in this action through counsel.

---

[1] *Glen Tullman Launches Livongo Health™ to Empower Consumers with Chronic Conditions to Live Better, Beginning with Diabetes*, LIVONGO HEALTH (Sept. 10, 2014, 9:02 AM), https://www.prnewswire.com/news-releases/glen-tullman-launches-livongo-health-to-empower-consumers-with-chronic-conditions-to-live-better-beginning-with-diabetes-274596491.html.

[2] *Id.*; *Livongo Health™ Raises $20 Million in Series B Funding From Kleiner Perkins Caufield & Byers, DFJ and General Catalyst*, LIVONGO HEALTH (Apr. 7, 2015, 8:31 AM), https://www.prnewswire.com/news-releases/livongo-health-raises-20-million-in-series-b-funding-from-kleiner-perkins-caufield--byers-dfj-and-general-catalyst-300061771.html.

[3] *Livongo Health™ Raises $20 Million in Series B Funding From Kleiner Perkins Caufield & Byers, DFJ and General Catalyst*, LIVONGO HEALTH (Apr. 7, 2015, 8:31 AM), https://www.prnewswire.com/news-releases/livongo-health-raises-20-million-in-series-b-funding-from-kleiner-perkins-caufield--byers-dfj-and-general-catalyst-300061771.html.

[4] Noor Zainab Hussain and Manas Mishra, *Teladoc bets big on online medicine with $18.5 billion Livongo deal*, REUTERS (Aug. 5, 2020, 3:36 AM), https://www.reuters.com/article/us-livongo-health-m-a-teladoc-health/teladoc-bets-big-on-online-medicine-with-18-5-billion-livongo-deal-idUSKCN2511ER.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1338(a) because this action arises under the patent laws of the United States, Title 35 of the United States Code, specifically 35 U.S.C. § 281.

7. This Court has personal jurisdiction over Teladoc because Teladoc is a Delaware corporation resident in Delaware and because it has generally appeared in this action.

8. Venue is appropriate in this District under 28 U.S.C. § 1400(b) because Teladoc is a Delaware corporation resident in Delaware.

## THE ASSERTED PATENTS

9. Data Health asserts causes of action for infringement of U.S. Patents Nos. 10,061,812 ('812 Patent); 11,144,554 ('554 Patent); and 11,151,142 ('142 Patent).

10. The '812 Patent is titled "Platform for Optimizing Data Driven Outcomes" and was issued by the U.S. Patent and Trademark Office on August 28, 2018. A copy of the '812 Patent is attached as Exhibit A.

11. The '554 Patent is titled "Platform for Optimizing Goal Progression" and was issued by the U.S. Patent and Trademark Office on October 12, 2021. A copy of the '554 Patent is attached as Exhibit B.

12. The '142 Patent is titled "Platform for Optimizing Goal Progression" and was issued by the U.S. Patent and Trademark Office on October 19, 2021. A copy of the '142 Patent is attached as Exhibit C.

13. Data Health is the exclusive owner by assignment of the '812, '554, and '142 Patents and holds all rights, title, and interest in them, including the right to bring this action.

## THE PATENTED TECHNOLOGY

14.     Traditional healthcare approaches recognize the importance of increasing patient adherence to goals and regimens prescribed by doctors or other professionals in improving overall outcomes. But achieving adherence to such goals is difficult. Behavioral science has long struggled with the problem of how to induce individuals to follow prescribed advice.

15.     Grafton is a private not-for-profit behavioral health organization that provides a continuum of services to individuals with intellectual, developmental, and behavioral needs from locations in Virginia and Minnesota. Patient treatment at Grafton relied historically on behavioral strategies, but the traditional aversive safety measures of seclusion and restraint regularly resulted in physical incidents between staff and patients. There was limited tracking and monitoring of patient progress in improving skills and reducing problematic behavior.

16.     In 2002, James Gaynor became the CEO of Grafton. In the face of rising costs from dangerous injury-prone physical interventions, Mr. Gaynor and other executives at Grafton began developing and refining a formal, systematic, data-management approach that tracked individualized goal outcomes in order to reduce trauma and costs associated with injuries to staff and patients.

17.     Eventually, Grafton's efforts paid off. Its approach centered on a cyclical process of collecting data on patients from multiple sources, assessing the various factors and influences that affected patient development, setting individualized goals for the patients, implementing strategies to reach those goals, tracking and continually evaluating patient attainment of their goals, and intervening to improve goal attainment based on that evaluation. For example, Grafton used a concept of "goal mastery" to assess individualized patient progress in attainment of the patient's assigned goals and to understand when the patient was falling short, automatically alerting staff

and enabling them to respond appropriately. And as patients met their specifically assigned goals, their reactive aggressive behavior decreased, leading to a reduced need for crisis intervention strategies and a lower rate of physical incidents between patients and staff.

18. Grafton's methods eventually led to savings of millions of dollars in decreased costs associated with interventions, while increasing goal attainment rates among the patient population from 35% to over 80%. Grafton's methods also improved overall goals related to patients' ability to engage productively and safely in learning, daily living activities, and social interactions.

19. Seeing the success of their program, Mr. Gaynor and Lisa Marshall, Ph.D., Grafton's Director of Clinical Services, sought to develop a generalized approach to patient care based on their experience at Grafton. They worked with software developers, including the founder and employees of Data Health, to combine their learned experience in tracking and improving goal outcomes with technology that would enable input of data by users, automatically develop goals and progress-tracking methodologies, and continually monitor collected data to both generate reports on patient progress and provide automated interventions and alerts to users.

20. In May 2013, AudioEye, Inc., the software company working with Grafton, issued a press release announcing that it had been hired by Grafton "to design, patent, and fully develop a new mobile behavioral health care technology platform."[5]

21. The result was the REBOOT (Reliable Evidence-Based Outcomes Optimization Technologies) software-as-a-service product, which enabled a wide variety of organizations

---

[5]  *AudioEye and Grafton Integrated Health Network Announce Technology Development Partnership*, AUDIOEYE, INC. (May 13, 2013, 8:00 AM), https://www.prnewswire.com/news-releases/audioeye-and-grafton-integrated-health-network-announce-technology-development-partnership-207169341.html.

seeking to improve goal outcomes for targeted individuals and stakeholders to take advantage of the methods that had been proven to improve goal mastery at Grafton.

22. The Data Health Patents are based on the REBOOT technology, and they claim methods, systems, and servers that improve outcomes associated with goal-tracking through a specific structure (of data collection, data assessment, and automated alerts and notifications) that has enabled organizations to better attain client adherence to prescribed regimens and improve clients' baseline conditions.

## THE ACCUSED PRODUCTS

23. Livongo launched its flagship diabetes treatment platform in 2014 as it received $10 million in Series A funding from venture capital firm General Catalyst.[6] Livongo's founder claimed to be "reinventing the way people with chronic conditions, beginning with diabetes, will experience and manage their disease," and the company offered a "two-way interactive glucometer, … cloud-based analytics, and real-time monitoring and support."[7]

24. In 2015, Livongo received $20 million in Series B funding from investors including noted Silicon Valley venture capital firm Kleiner Perkins Caufield & Byers.[8] A Kleiner Perkins partner who joined the Livongo board of directors highlighted "[Livongo's] ability to collect real-

---

[6] *Glen Tullman Launches Livongo Health™ to Empower Consumers with Chronic Conditions to Live Better, Beginning with Diabetes*, LIVONGO HEALTH (Sept. 10, 2014, 9:02 AM), https://www.prnewswire.com/news-releases/glen-tullman-launches-livongo-health-to-empower-consumers-with-chronic-conditions-to-live-better-beginning-with-diabetes-274596491.html.
[7] *Id.*
[8] *Livongo Health™ Raises $20 Million in Series B Funding From Kleiner Perkins Caufield & Byers, DFJ and General Catalyst*, LIVONGO HEALTH (Apr. 7, 2015, 8:31 AM), https://www.prnewswire.com/news-releases/livongo-health-raises-20-million-in-series-b-funding-from-kleiner-perkins-caufield--byers-dfj-and-general-catalyst-300061771.html.

time biometric data, analyze it in the cloud and instantly push down guidance and support to the user" as "unique in diabetes management."[9]

25. In 2016, Livongo raised $44.5 million in Series C funding.[10]

26. In 2017, Livongo raised another $52.5 million in funding, noting that it was "demonstrating significant improvements in health outcomes for its members and cost savings for its clients."[11]

27. In 2020, Teladoc merged with Livongo in a transaction valuing Livongo at $18.5 billion, joining "the market leaders in virtual care and applied health signals" and seeking to leverage their "combined applied analytics, expert guidance and connected technology to deliver, enable and empower better health outcomes."[12]

28. Livongo's (and now Teladoc's) success relies on the use of Data Health's patented technology. Its diabetes management platform, for example, is centered around the same structure of collecting real-time data from users, automatically evaluating that data based on individualized patient profiles, and automatically generating alerts based on those evaluations. Those alerts enable and are then used for further engagement of users and improvement of outcomes. The "applied health signals" that Livongo highlights are created by "join[ing] dozens of data sets together and combin[ing] them with the signals from [Livongo's] devices, coaches, and web assets, to extract

---

[9] *Id.*
[10] Brian Gormley, *Livongo Health Raises $44.5M Series C to Help Manage Diabetes*, WALL STREET JOURNAL (Apr. 12, 2016, 11:34 AM), https://www.wsj.com/articles/DJFVW00120160412ec4cbbso3.
[11] *General Catalyst and Kinnevik Co-Lead a $52.5 Million Investment in Livongo Health*, LIVONGO HEALTH (Mar. 16, 2017, 8:00 AM), https://www.prnewswire.com/news-releases/general-catalyst-and-kinnevik-co-lead-a-525-million-investment-in-livongo-health-300424555.html.
[12] *Teladoc Health Completes Merger with Livongo*, TELADOC HEALTH (Oct. 30, 2020), https://ir.teladoc.com/news-and-events/investor-news/press-release-details/2020/Teladoc-Health-Completes-Merger-with-Livongo/default.aspx.

the drivers of behavior change," and Livongo "then deliver[s] actionable, personalized and timely recommendations through a broad set of applications to [their] members."[13]

29. The Livongo diabetes management platform directly parallels Data Health's patented technology. Attached as Exhibits D, E, and F are preliminary claim charts comparing public information about Livongo's diabetes management platform, including its Blood Glucose Meter, to one claim of each of the Data Health Patents.

30. Livongo, when it went public in 2019, filed an S-1 registration statement with the Securities and Exchange Commission acknowledging that it "had in the past and may in the future" be subject to claims of patent infringement, and that "[t]here may be intellectual property rights held by others, including issued patents and trademarks or pending applications, that cover significant aspects of our technologies, content, branding or business methods."[14]

## COUNT 1

## INFRINGEMENT OF U.S. PATENT NO. 10,061,812

31. Data Health repeats and incorporates the allegations set forth in paragraphs 1 through 27.

32. Teladoc has infringed and continues to infringe at least claim 1 of the '812 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale in the United States patented products and services, including the Livongo diabetes management platform and the Livongo Blood Glucose Meter ("the Accused Products").

33. Data Health has not authorized the infringing activity described in paragraph 29.

---

[13] *Applied Health Signals*, LIVONGO, https://wwwdev.livongo.com/applied-health-signals/ (last visited June 24, 2023).
[14] *Form S-1: Registration Statement*, LIVONGO HEALTH, INC. (as filed with the Securities and Exchange Commission on June 28, 2019), 50.

8

34. Teladoc has had knowledge of its infringing activity at least since the filing of this complaint on February 13, 2023. Since then, Teladoc has indirectly infringed and continues to indirectly infringe the '812 Patent by knowingly and intentionally inducing infringement by others, including its customers. For example, Teladoc instructs and encourages its customers through manuals, instructions, and/or marketing materials, *see, e.g.*, *Livongo Blood Glucose Monitoring System Owner's Manual*, Livongo, https://cdn.livongo.com/doc/BG300_Owners_Manual_EN.pdf (last visited June 27, 2023), to use the Accused Products in a manner that infringes the '812 Patent. Teladoc knows its customers use the Accused Products as instructed and intended, yet Teladoc continues to instruct and encourage the use of the Accused Products by its customers knowing it infringes the '812 Patent.

35. Teladoc's activity has damaged Data Health, and Data Health is entitled to damages to be proved at trial, at least in the amount of a reasonable royalty.

36. Upon information and belief, based on Teladoc's claim to status as a "market leader[] in virtual care and applied health signals," its knowledge that Livongo's business may have been based on technology patented by others, and the publication of Grafton's innovative behavioral health patents, Teladoc was aware that it was infringing the '812 Patent before the filing of this complaint on February 13, 2023. Teladoc's infringement was therefore willful, and Data Health is entitled to enhanced damages.

## COUNT 2

## INFRINGEMENT OF U.S. PATENT NO. 11,144,554

37. Data Health repeats and incorporates the allegations set forth in paragraphs 1 through 27.

9

38. Teladoc has infringed and continues to infringe at least claim 1 of the '554 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale in the United States patented products and services, including the Livongo diabetes management platform and the Livongo Blood Glucose Meter ("the Accused Products").

39. Data Health has not authorized the infringing activity described in paragraph 35.

40. Teladoc has had knowledge of its infringing activity at least since the filing of this complaint on February 13, 2023. Since then, Teladoc has indirectly infringed and continues to indirectly infringe the '554 Patent by knowingly and intentionally inducing infringement by others, including its customers. For example, Teladoc instructs and encourages its customers through manuals, instructions, and/or marketing materials, *see, e.g.*, *Livongo Blood Glucose Monitoring System Owner's Manual*, LIVONGO, https://cdn.livongo.com/doc/BG300_Owners_Manual_EN.pdf (last visited June 27, 2023), to use the Accused Products in a manner that infringes the '554 Patent. Teladoc knows its customers use the Accused Products as instructed and intended, yet Teladoc continues to instruct and encourage the use of the Accused Products by its customers knowing it infringes the '554 Patent.

41. Teladoc's activity has damaged Data Health, and Data Health is entitled to damages to be proved at trial, at least in the amount of a reasonable royalty.

42. Upon information and belief, based on Teladoc's claim to status as a "market leader[] in virtual care and applied health signals," its knowledge that Livongo's business may have been based on technology patented by others, and the publication of Grafton's innovative behavioral health patents, Teladoc was aware that it was infringing the '554 Patent before the filing of this complaint on February 13, 2023. Teladoc's infringement was therefore willful, and Data Health is entitled to enhanced damages.

## COUNT 3

## INFRINGEMENT OF U.S. PATENT NO. 11,151,142

43. Data Health repeats and incorporates the allegations set forth in paragraphs 1 through 27.

44. Teladoc has infringed and continues to infringe at least claim 1 of the '142 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and offering for sale in the United States patented products and services, including the Livongo diabetes management platform and the Livongo Blood Glucose Meter ("the Accused Products").

45. Data Health has not authorized the infringing activity described in paragraph 41.

46. Teladoc has had knowledge of its infringing activity at least since the filing of this complaint on February 13, 2023. Since then, Teladoc has indirectly infringed and continues to indirectly infringe the '142 Patent by knowingly and intentionally inducing infringement by others, including its customers. For example, Teladoc instructs and encourages its customers through manuals, instructions, and/or marketing materials, *see, e.g.*, *Livongo Blood Glucose Monitoring System Owner's Manual*, LIVONGO, https://cdn.livongo.com/doc/BG300_Owners_Manual_EN.pdf (last visited June 27, 2023), to use the Accused Products in a manner that infringes the '142 Patent. Teladoc knows its customers use the Accused Products as instructed and intended, yet Teladoc continues to instruct and encourage the use of the Accused Products by its customers knowing it infringes the '142 Patent.

47. Teladoc's activity has damaged Data Health, and Data Health is entitled to damages to be proved at trial, at least in the amount of a reasonable royalty.

48. Upon information and belief, based on Teladoc's claim to status as a "market leader[] in virtual care and applied health signals," its knowledge that Livongo's business may

have been based on technology patented by others, and the publication of Grafton's innovative behavioral health patents, Teladoc was aware that it was infringing the '812 Patent before the filing of this complaint on February 13, 2023. Teladoc's infringement was therefore willful, and Data Health is entitled to enhanced damages.

## DEMAND FOR JURY TRIAL

49. Data Health hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring that Teladoc has infringed the Data Health Patents;

B. Awarding damages arising out of Teladoc's infringement of the Data Health Patents, including enhanced damages pursuant to 35 U.S.C. § 284, to Data Health, together with pre-judgment and post-judgment interest, in an amount according to proof;

C. Awarding attorneys' fees to Data Health pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

D. Awarding such other costs and further relief as the Court may deem just and proper.

Dated: June 27, 2023                                  Respectfully submitted,

Of Counsel:                                           FARNAN LLP

Barry Barnett                                         /s/ Michael J. Farnan
SUSMAN GODFREY L.L.P.                                 Brian E. Farnan (Bar No. 4089)
1000 Louisiana Street, Suite 5100                     Michael J. Farnan (Bar No. 5165)
Houston, Texas 77002                                  919 N. Market St., 12th Floor
Telephone: (713) 651-9366                             Wilmington, DE 19801
Facsimile: (713) 654-6666                             Tel: (302) 777-0300
bbarnett@susmangodfrey.com                            Fax: (302) 777-0301

|  |  |
|---|---|
| Winston Luo<br>SUSMAN GODFREY L.L.P.<br>401 Union Street, Suite 3000<br>Seattle, WA 98101<br>Telephone: 206-516-3880<br>Fax: 206-516-3883<br>wluo@susmangodfrey.com | bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>*Attorneys for Plaintiff Data Health Partners, Inc.* |