# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **DATA HEALTH PARTNERS, INC.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**TELADOC HEALTH, INC.,**<br><br>    **Defendant.** | **Court No. 1:23-cv-00160-JCG** |

## <u>OPINION AND ORDER</u>

[Denying Defendant's Third Motion to Dismiss.]

Dated:  July 23, 2026

<u>Brian E. Farnan</u> and <u>Michael J. Farnan</u>, Farnan LLP, of Wilmington, DE; <u>Elizabeth Aronson</u> and <u>Barry Barnett</u>, Susman Godfrey LLP, of Houston, TX.  Attorneys for Plaintiff Data Health Partners, Inc.

<u>Cameron P. Clark</u> and <u>Rodger D. Smith, II</u>, Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, DE; <u>Michael V. Solomita</u> and <u>Stephanie DeBrow</u>, Norton Rose Fulbright US LLP, of New York, N.Y.; <u>Stephen Guzzi</u>, Norton Rose Fulbright US LLP, of Washington, D.C.; <u>Gabriel Culver</u>, Norton Rose Fulbright US LLP, of Austin, TX.  Attorneys for Defendant Teladoc Health, Inc.

Choe-Groves, Judge:  Plaintiff Data Health Partners, Inc. ("Plaintiff" or "Data Health") filed this case against Defendant Teladoc Health, Inc. ("Defendant" or "Teladoc") alleging infringement of U.S. Patent Numbers 11,144,554 (the "'554 Patent"), 11,151,142 (the "'142 Patent"), 11,675,791 (the "'791 Patent"), and

Court No. 1:23-cv-00160                                                      Page 2

11,809,431 (the "'431 Patent") (collectively, the "Asserted Patents").  Am. Compl.

Patent Infringement ("Second Am. Compl.") (D.I. 58); see Ex. A, U.S. Patent

Number 11,144,554 ("'554 Patent") (D.I. 58-1); Ex. B, U.S. Patent Number

11,151,142 ("'142 Patent) (D.I. 58-2); Ex. C, U.S. Patent Number 11,675,791

("'791 Patent") (D.I. 58-3); Ex. D, U.S. Patent Number 11,809,431 ("'431 Patent")

(D.I. 58-4).

On February 13, 2023, Plaintiff filed its Original Complaint for Patent

Infringement ("Complaint") alleging direct, indirect, and willful infringement of

the '554 Patent and U.S. Patent No. 10,061,812 (the "'812 Patent").  Orig. Compl.

Patent Infringement ("Compl.") (D.I. 1).  Defendant filed Defendant's Motion to

Dismiss ("Defendant's First Motion to Dismiss") under 35 U.S.C. §101 and for

failing to allege sufficiently willful and indirect infringement of the '554 Patent

and the '812 Patent.  Def.'s Mot. Dismiss ("First Mot. Dismiss") (D.I. 10); Def.'s

Opening Br. Supp. Mot. Dismiss ("Def.'s Br. First Mot. Dismiss") (D.I. 11).  On

June 27, 2023, Plaintiff filed its Amended Complaint alleging direct, indirect, and

willful infringement of the '554 Patent, the '812 Patent, and the '142 Patent.  Am.

Compl. Patent Infringement ("First Am. Compl.") (D.I. 14).  Defendant filed

Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Defendant's

Second Motion to Dismiss") under 35 U.S.C. § 101 and for failing to allege willful

infringement.  Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Second Mot. Dismiss")

Court No. 1:23-cv-00160                                                                 Page 3

(D.I. 18); Def.'s Opening Br. Supp. Mot. Dismiss Pl.'s First Am. Compl. ("Def.'s

Br. Second Mot. Dismiss") (D.I. 19).  The Court issued an Opinion and Order

denying Defendant's Second Motion to Dismiss as to Data Health's direct

infringement claims and granting the motion as to Data Health's pre-suit willful

infringement claims.  Opinion and Order (May 20, 2024) (D.I. 27).  Plaintiff then

filed its Second Amended Complaint.  Second Am. Compl.

       Before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(6) ("Defendant's Third Motion to Dismiss") for failure to state a claim.

See Def.'s Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) ("Third Mot. Dismiss")

(D.I. 68); Opening Br. Supp. Def.'s Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6)

("Def.'s Br. Third Mot. Dismiss") (D.I. 69).

       For the reasons discussed below, Defendant's Third Motion to Dismiss is

denied.

## BACKGROUND

Data Health is a corporation organized and existing under the laws of

Delaware, with its principal place of business in Beverly Hills, California.  Second

Am. Compl. at ¶ 4.  Data Health is the owner by assignment of all rights, title, and

interest in the Asserted Patents.  Id. at ¶ 14.  The Second Amended Complaint

alleges that Teladoc is a Delaware corporation with its principal place of business

in Purchase, New York.  Id. at ¶ 5.  Plaintiff contends that in 2014, Livongo Health

Court No. 1:23-cv-00160                                                      Page 4

("Livongo") launched its flagship diabetes treatment platform and Teladoc

subsequently merged with Livongo in 2020.  Id. at ¶¶ 24, 28.  Data Health claims

that Livongo's (and now Teladoc's) success relies on the use of Data Health's

patented technology and that the Livongo diabetes platform directly parallels Data

Health's patented technology.  Id. at ¶¶ 29–30.  Plaintiff avers that Livongo's

diabetes management platform is centered around the same structure of collecting

real-time data from users, automatically evaluating that data based on

individualized patient profiles, and automatically generating alerts based on those

evaluations.  Id. at ¶ 29.

Data Health asserts that Teladoc has and continues to directly and indirectly

infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271

by making, using, selling, and offering for sale in the United States patented

products and services, including the Livongo diabetes management platform and

the Livongo Blood Glucose Meter (the "Accused Products").  Id. at ¶¶ 33, 35, 39,

41, 45, 47, 51, 53.  Plaintiff attached exhibits to its Second Amended Complaint

comparing public information about the Accused Products to at least one claim of

the Asserted Patents.  Id. at ¶ 30; see Id., Exs. E, F, G, H (D.I. 58-5, 58-6, 58-7, 58-

8).

The '554 Patent, titled "Platform for Optimizing Goal Progression," was

issued on October 12, 2021, by the United States Patent and Trademark Office

Court No. 1:23-cv-00160                                                    Page 5

("USPTO").  '554 Patent.  The '142 Patent, titled "Platform for Optimizing Goal

Progression," was issued by the USPTO on October 19, 2021.  '142 Patent.  The

'791 Patent, titled "System and Method for Tracking Progression Toward a

Customized Goal," was issued by the USPTO on June 13, 2023.  '791 Patent.  The

'431 Patent, titled "System and Method for Achieving Goals," was issued by the

USPTO on November 7, 2023.  '431 Patent.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which

grant the Court jurisdiction over civil actions relating to patents, plant variety

protection, copyrights, and trademarks.  28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short

and plain statement of the claim showing that the pleader is entitled to relief.  Fed.

R. Civ. P. 8(a)(2).  If pleadings fail to state a claim, in whole or in part, on which a

court may grant relief, a defendant may seek to dismiss a complaint under Federal

Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"),

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v Twombly ("Twombly"), 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

In patent infringement cases, allegations of infringement are governed by the Iqbal/Twombly pleading standard.  Golden v. Apple Inc., 819 F. App'x 930, 930–31. (Fed. Cir. 2020).  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.  Bot M8 LL v. Sony Corp., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Once a motion to dismiss is filed under Federal Rule of Civil Procedure 12, the filing party is generally precluded from filing another motion to dismiss raising defenses that were available to the filing party at the time that the earlier motion was filed.  Fed. R. Civ. P. 12(g)(2), (h)(1)(A).

Court No. 1:23-cv-00160                                                              Page 7

## DISCUSSION

**I.      Waiver Under Federal Rule of Civil Procedure 12(g)(2)**

Federal Rule of Civil Procedure 12(g)(2) provides: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).

In its Complaint, Plaintiff alleged direct, indirect, and willful infringement of the '554 Patent and the '812 Patent.  See Compl. at ¶¶ 13–28.  Defendant's First Motion to Dismiss argued that Data Health's Complaint should be dismissed for failure to state a claim upon which relief could be granted due to claims of invalidity under 35 U.S.C. § 101 and inadequate pleading of willful and indirect infringement of the '812 Patent and '544 Patent.  First Mot. Dismiss; see Def.'s Br. First Mot. Dismiss.  Plaintiff's First Amended Complaint alleged direct, indirect, and willful infringement of the '554 Patent, the '812 Patent, and the '142 Patent.  First. Am. Compl. at ¶¶ 31–48.  Defendant's Second Motion to Dismiss argued that Data Health's First Amended Complaint should be dismissed because the '554 Patent, the '812 Patent, and the '142 Patent lacked patent-eligible subject matter under 35 U.S.C. § 101 and because Data Health failed to plausibly allege willful infringement.  See Second Mot. Dismiss; Def.'s Br. Second Mot. Dismiss.

The Court issued an Opinion and Order denying Defendant's Second Motion

to Dismiss under 35 U.S.C § 101 and granting Defendant's Second Motion to Dismiss as to the willful infringement claims.  Opinion and Order (May 20, 2024). Following the Court's Opinion and Order, Plaintiff filed its Second Amended Complaint, alleging direct and indirect infringement of the '554 Patent, the '142 Patent, the '791 Patent, and the '431 Patent.  Second Am. Compl. at ¶¶ 32–54. Plaintiff alleged direct and indirect infringement of the '554 Patent in all three complaints and infringement of the '142 Patent in the First and Second Amended Complaints.  The Court notes that Defendant moved to dismiss: (1) the '554 Patent and the '812 Patent under 35 U.S.C. § 101 and for failure to adequately plead willful and indirect infringement in Defendant's First Motion to Dismiss; (2) the '554 Patent, the '812 Patent, and the '142 Patent under 35 U.S.C. § 101 and for failure to adequately plead willful infringement in Defendant's Second Motion to Dismiss; and (3) the '554 Patent, the '142 Patent, the '791 Patent,[1] and the '431 Patent for failure to adequately plead direct and indirect infringement in Defendant's Third Motion to Dismiss.

Plaintiff argues that Defendant could have challenged the '554 Patent and the '142 Patent allegations in its Second Motion to Dismiss and avers that the

---

[1] The Court observes that Defendant's Third Motion to Dismiss only lists the '554 Patent, the '142 Patent, and the '431 Patent, and omits the '791 Patent.  See Def.'s Third Mot. Dismiss.  However, Defendant includes the '791 Patent in its accompanying brief.  See Def.'s Br. Third Mot. Dismiss.

Second Amended Complaint's allegations at issue here are substantially similar to the First Amended Complaint.  Data Health's Br. Opp'n Teladoc's Mot. Dismiss Second Am. Compl. ("Pl.'s Resp. Br. Third Mot. Dismiss") at 4 (D.I. 75).  Defendant contends that Plaintiff introduced new allegations for many of the claim elements of the '554 Patent and the '142 Patent and argues that Plaintiff introduced newly cited factual bases for many of the claim elements in the Preliminary Infringement Contentions, including those at issue in Defendant's Third Motion to Dismiss.  Def.'s Reply Br. Supp. Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) ("Def.'s Reply. Br. Third Mot. Dismiss") at 1–2 (D.I. 82).  Defendant avers that Rule 12(g)(2) does not apply because the Second Amended Complaint contains new factual allegations in support of Plaintiff's claims.  Id. at 1 (citing ECB USA, Inc. v. Savencia, S.A. ("ECB USA"), No. 19-cv-731-RGA-CJB, 2021 WL 3187495, at *11 (D. Del. July 28, 2021) (citation omitted)).

The Court notes that the new factual allegations raised by Plaintiff in the Second Amended Complaint, which were cited by Defendant as examples that bar application of Rule 12(g)(2), consist of Preliminary Infringement Contentions attached as exhibits to the Second Amended Complaint.  Def.'s Reply Br. at 1–2; see Second Am. Compl., Exs. E, F.  In the First Amended Complaint and Second Amended Complaint, Plaintiff attached charts "comparing public information about Livongo's diabetes management platform, including its Blood Glucose

Meter, to one claim of each of the Data Health Patents." First Am. Compl. at ¶ 29; First Am. Compl., Exs. D, E, F; Second Am. Compl. at ¶ 30; Second Am. Compl., Exs. E, F, G, H. In the First Amended Complaint, Exhibits E and F show how the Livongo diabetes management platform maps onto Claim 1 of the '554 Patent and '142 Patent by providing images of the Livongo diabetes management platform under language from Claim 1. See First Am. Compl., Ex. E at 4–18 (D.I. 14-5), Ex. F at 4–16 (D.I. 14-6). In the Second Amended Complaint, Exhibit E shows the same images of the Livongo diabetes management platform, with newly added explanations as to how the Livongo diabetes management platform maps on Claim 1 and newly added Claims 3 and 10 of the '554 Patent. See Second Am. Compl., Ex. E at 2–25 (D.I. 58-5). Exhibit F of the Second Amended Complaint also shows newly added explanations as to how the Livongo diabetes management platform maps on Claim 1 and newly added Claims 6–8 of the '142 Patent. See id. at Ex. F at 2–43 (D.I. 58-6).

The Court concludes that the additions to the exhibits of the Second Amended Complaint are new factual allegations relating to patent infringement that sufficiently defeat Plaintiff's argument that Defendant waived Defendant's right to challenge under Rule 12(g)(2). See ECB USA, 2021 WL 3187496, at *11 (concluding that the defendants did not waive their right to challenge the second amended complaint's breach of contract claim pursuant to Rule 12(g)(2) because

Court No. 1:23-cv-00160                                          Page 11

the second amended complaint alleged breach of contract based on new factual

allegations that were not contained in the first amended complaint).

## II.      Direct Infringement

Liability for direct infringement arises when a party "without authority

makes, uses, offers to sell, or sells any patented invention, within the United States

or imports into the United States any patented invention during the term of the

patent[.]" 35 U.S.C § 271(a). To plead direct infringement, a plaintiff must recite

"some factual allegations that, when taken as true, articulate why it is plausible that

the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A]

plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly

standard by reciting the claim elements and merely concluding that the accused

product has those elements." Id. To satisfy the Iqbal pleading standard in a patent

case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols.,

Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (internal quotation marks omitted)

(citing Erickson v. Pardus, 551 U.S. 89, 98 (2007)). A complaint need only give a

defendant "fair notice of what the [infringement] claim is and the ground upon

which it rests." Id. (internal quotation marks omitted) (citing Twombly, 550 U.S.

at 555). A plaintiff must do more than assert that the product infringes the claim in

order to provide notice. Boston Sci. Corp. v. Nevro Corp. ("Boston Sci. Corp."),

415 F. Supp. 3d 482, 489 (D. Del. 2019). Notice is provided by showing "how the

Court No. 1:23-cv-00160                                                    Page 12

defendant plausibly infringes by alleging some facts connecting the allegedly

infringing product to the claim elements." Id. (alteration omitted) (citing SIPCO,

LLC v. Streetline, Inc., 230 F. Supp. 3d 351, 353 (D. Del. 2017)).

Data Health contends that Teladoc has infringed and continues to infringe

the Asserted Patents by making, using, selling, and offering for sale in the United

States patented products and services, including the Accused Products.  Second

Am. Compl. at ¶¶ 33, 39, 45, 51.  Data Health alleges that the Accused Products

infringe at least Claims 3 and 10 of the '554 Patent. Id. at ¶ 33.

Claim 3 of the '554 Patent recites "[t]he method according to claim 1,

wherein the data is compiled through a plurality of collection methods including

task analysis, intensive trial teaching, interval recording, time recording,

frequency, percentage data, and a [reinforcement] recorder."  '554 Patent at 41:15–

19.  Claim 10 of the '554 Patent recites:

> The method according to claim 1, further comprising:
> determining whether the date required is received from
> each of the one or more providers; and
> sending an alert to the one or more providers in
> response to determining there is missing data for the
> client associated with the one or more providers.

Id. at 41:44–49.

Data Health avers that the Accused Products infringe at least Claims 6–8 of

the '142 Patent.  Second Am. Compl. at ¶ 39.  Claim 6 of the '142 Patent recites

"[t]he method according to claim 1, wherein the data includes at least intervention

Court No. 1:23-cv-00160                                          Page 13

plans, desired outcomes and objectives, recorded activities, and general notes."

'142 Patent at 32:7–9.  Claim 7 of the '142 Patent claims "[t]he method according

to claim 1, further comprising: determining whether the data required is received

from each of the providers; and sending an alert to one or more providers in

response to determining there is missing data for one or more clients associated

with the one or more providers."  Id. at 32:10–15.  Lastly, Claim 8 of the '142

Patent recites "[t]he method according to claim 1, further comprising: receiving the

data through a plurality of collection [methods] including task analysis, intensive

trial teaching, interval recording, time recording, frequency, [percentage] data, and

a reinforcement recorder."  Id. at 32:16–20.

Data Health alleges that the Accused Products infringe at least Claim 1 of

the '791 Patent.  Second Am. Compl. at ¶ 45.  Claim 1 of the '791 Patent recites:

> A method for tracking progression toward a customized
> goal, comprising:
> receiving input establishing accounts for clients, wherein
> the clients are individuals receiving treatment or assis-
> tance, and wherein the accounts are stored in a server
> available through one or more networks;
> assigning each of the clients to one or more providers
> in response to selections from an administrator,
> wherein the one or more providers communicate with
> the client via at least a communications device;
> establishing customized goals for each of the clients based
> on treatment or assistance required;
> receiving data associated with each of the clients from a
> biometric device via the communication device;
> compiling data associated with each of the clients;
> determining whether the customized goals are being met

> in response to consecutive data points of the compiled
> data passing one or more thresholds to become signifi-
> cant for one or more of the clients; and
> automatically communicating alerts to at least the one or
> more providers to at least perform a review of the goals
> for the one or more of the clients in response to
> consecutive data points of the compiled data varying
> from the one or more thresholds to become significant
> for the one or more of the clients.

'791 Patent at 30:62–31:19.

Data Health contends that the Accused Products infringe at least Claim 1 of

the '431 Patent.  Second Am. Compl. at ¶ 51.  Claim 1 of the '431 Patent recites:

> A method for tracking progression toward goals, the
> method comprising:
> receiving input establishing one or more clients, wherein
> the one or more clients are individuals receiving treat-
> ment or assistance;
> assigning the one or more clients to one or more provid-
> ers, wherein the one or more providers include at least
> one or more individuals available to treat or assist the
> one or more clients;
> creating a baseline associated with the one or more
> clients;
> setting one or more goals for each of the one or more
> clients;
> compiling data associated with the one or more clients
> over time, wherein the data includes at least one of
> weight data and provider data;
> storing the compiled data associated with the one or more
> clients in a server available through one or more
> networks;
> determining, for each goal of the one or more goals, a
> series of thresholds that represents progress towards the
> goal;
> determining whether progress towards each goals is being
> achieved by comparing the series of thresholds that

> represents progress towards the goal against the com-
> piled data and the baseline for the compiled data; and
> automatically communicating alerts in response to the
> compiled data varying from one or more of the series
> of thresholds to become significant for one of the one
> or more clients.

'431 Patent at 41:25–54.

Teladoc contends that Data Health's infringement contentions either "repeat claim language verbatim, collapse multiple distinct limitations into a single undifferentiated reference, or cite evidence that is facially inconsistent with the limitation at issue." Def.'s Br. Third Mot. Dismiss at 4. Plaintiff argues that it identified the Accused Products and described their infringing functionalities: "goal setting, data compilation, tracking against thresholds, and customized behavioral insights . . . which are operationalized to attain desired health goals." Pl.'s Resp. Br. Third Mot. Dismiss at 5–6 (citing Second Am. Compl. at ¶¶ 15–30; Exs. E, F, G, H).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 664. A plaintiff may state a plausible claim for direct infringement by specifically identifying the accused product that "perform[s] the same unique function" as the patented system. DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 469 (D. Del. 2016) (internal quotation marks and citation omitted).

The Second Amended Complaint identified the Accused Products as performing the same unique function as the Asserted Patents. Second Am. Compl. at ¶¶ 29–30. Plaintiff alleges that the Asserted Patents "collect[] data on patients from multiple sources, assess[] the various factors and influences that affected patient development, set[] individualized goals for the patients, implement[] strategies to reach those goals, track[] and continually evaluat[e] patient attainment of their goals, and interven[e] to improve goal attainment based on that evaluation." Id. at ¶ 18. Specifically, Data Health alleges that the Accused Products are "centered around the same structure of collecting real-time data from users, automatically evaluating that data based on individualized patient profiles, and automatically generating alerts based on those evaluations." Id. at ¶ 29. Data Health contends that the Accused Products "directly parallel[] Data Health's patented technology[,]" and provides exhibits comparing public information to the claims of the Asserted Patents. Id. at ¶ 30. Exhibits E, F, G, and H of the Second Amended Complaint contain charts that map the Asserted Patents' claim language to the alleged infringing functionality of the Accused Products. See id. at Exs. E, F, G, H.

Specific facts are not necessary at the pleading stage, but there must be fair notice to the defendant of what the claim is and the grounds upon which it rests. Bot M8, 4 F.4th at 1353 (quoting Erickson, 551 U.S. at 93). The Court concludes

that Counts I, II, III, and IV of the Second Amended Complaint are sufficiently pled to allow the Court to draw a reasonable inference that the Accused Products directly infringe the Asserted Patents.

### III.      Indirect Infringement

In resolving whether indirect infringement is pled properly, the Court must first determine whether Plaintiff has sufficiently alleged direct infringement.  See In Re Bill of Lading Transm'n and Processing Sys. Patent Litig. ("In Re Bill of Lading"), 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (internal quotation marks omitted).  As discussed above, Plaintiff has pled direct infringement adequately for the Asserted Patents, and the Court proceeds to examine the indirect infringement claims.

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.  Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017); see also 35 U.S.C § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  A plaintiff is required to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit.  Global-Tech Appliances, Inc. v. SEB S.A. ("Global-Tech"), 563 U.S. 754,

764–66 (2011).  "[U]nlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech, 563 U.S. at 764–66).  Without knowledge of infringement, there is not enough to establish liability for induced infringement.  See Global-Tech, 563 U.S. at 765–66. The U.S. Supreme Court reaffirmed its holding in Global-Tech and clarified that proof of induced infringement requires not only knowledge of the patent, but also proof that the defendant "knew as well that 'the induced acts constitute patent infringement.'"  Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 640 (2015) (citing Global-Tech, 563 U.S. at 766).

Specific intent is a distinct element from the knowing inducement of infringing acts.  "A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-1197-LPS, 2021 WL 1785072, at *3 (D. Del. May 5, 2021) (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

If actual knowledge is not adequately pled, a patentee can establish

knowledge of patent infringement by alleging that the defendant was willfully blind, which requires showing that the defendant: (1) subjectively believed that there was a high probability that the induced acts constituted infringement; and (2) took deliberate actions to avoid learning of that fact.  See Global-Tech, 563 U.S. at 769.

Defendant avers that all of the indirect infringement claims should be dismissed.  Def.'s Br. Third Mot. Dismiss at 23.  Specifically, Defendant argues that the Second Amended Complaint: (1) is "silent on any allegations that Teladoc's customer directly infringe any claim of any of the Asserted Patents[;]" (2) "does not explain what the cited materials actually say or how they direct infringement[;]" and (3) "merely recites the elements of induced infringement in conclusory form."  Id. at 24–26.

The Second Amended Complaint alleges that when Livongo went public in 2019, it filed an S-1 registration statement with the U.S. Securities and Exchange Commission, in which Livongo acknowledged that it "'had in the past and may in the future' be subject to claims of patent infringement, and that '[t]here may be intellectual property rights held by others, including issued patents and trademarks or pending applications, that cover significant aspects of [Livongo's] technologies, content, branding or business methods.'"  Second Am. Compl. at ¶ 31.

Plaintiff alleges that Teladoc has had knowledge of its infringing activity

Court No. 1:23-cv-00160                                                      Page 20

related to the '554 Patent and the '142 Patent "at least since the filing of [the

Complaint] on February 13, 2023[,]" and  related to the '791 Patent and the '431

Patent "at least since the filing of [the Second Amended Complaint] on January 6,

2026." Id. at ¶¶ 35, 41, 47, 53.  Plaintiff contends that through Teladoc's "claim to

status as a 'market leader[] in virtual care and applied health signals,' its

knowledge that Livongo's business may have been based on technology patented

by others, and the publication of [the Asserted Patents], Teladoc was aware that it

was infringing" the Asserted Patents before the filing of the Complaint on

February 13, 2023, and the Second Amended Complaint on January 6, 2026.[2] Id.

at ¶¶ 37, 43, 49, 55.  Since the filing of the Complaint and Second Amended

Complaint, Data Health avers that "Teladoc has indirectly infringed and continues

to indirectly infringe [the Asserted Patents] by knowingly and intentionally

inducing infringement by others, including its customers" by instructing and

encouraging its customers "through manuals, instructions, and/or marketing

materials . . . to use the Accused Products in a manner that infringes [the Asserted

Patents]." Id. at ¶¶ 35, 41, 47, 53 (citing Livongo Blood Glucose Monitoring

---

[2] Data Health filed Plaintiff's Motion to Amend Complaint and Lift Stay (D.I. 52) on January 8, 2026.  The Parties filed a Stipulation and Order Regarding Lifting Stay and Leave to Amend Complaint (D.I. 56) on February 4, 2026.  The Court subsequently granted the Parties' Stipulation and Order Regarding Lifting Stay and Leave to Amend Complaint and Plaintiff's Second Amended Complaint was filed on February 11, 2026.  See Order (Feb. 10, 2026) (D.I. 57).

System Owner's Manual).

Courts in this district have determined that pre-filing knowledge is not required to state a claim for inducement.  See Clouding IP, LLC v. Amazon.com, Inc., Nos. 12-cv-00641-LPS, 12-cv-00642-LPS, 12-cv-00675-LPS, 2013 WL 2293452, at *3 (D. Del. May 24, 2013); DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc. ("DoDots"), No. 18-cv-00098-MN, 2019 WL 3069773, at *3 (D. Del. July 12, 2019) (concluding that induced infringement claims based on post-suit conduct are permissible).  The complaint can be a source of the knowledge required to sustain claims of induced infringement occurring after the filing date and can provide sufficient knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement after an amended complaint is filed.  See Groove Digital, Inc. v. Jam City, Inc., No. 18-cv-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019); Walker Digital, LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 565 (D. Del. 2012) ("In sum, if a complaint sufficiently identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of Global-Tech."); SoftView LLC v. Apple Inc., No. 10-cv-00389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("An accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the

remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents.").

The complaint alone cannot operate to establish knowledge, however, without being amended. See Wrinkl, Inc. v. Facebook, Inc., No. 20-cv-01345-RGA, 2021 WL 4477022, at *6–7 (D. Del. Sept. 30, 2021); DoDots, 2019 WL 3069773, at *3; Helios Streaming, LLC v. Vudu, Inc., No. 19-cv-01792-CFC-SRF, 2020 WL 2332045, at *4–5 (D. Del. May 11, 2020), report and recommendation adopted, 2020 WL 3167641 (D. Del. June 15, 2020).

Plaintiff filed its original Complaint on February 13, 2023, and its First Amended Complaint on June 27, 2023. Compl.; First Am. Compl. The First Amended Complaint identified the '812 Patent, the '554 Patent, and the '142 Patent. First Am. Compl. Plaintiff later filed the Second Amended Complaint on February 11, 2026, to further explain its allegations of direct and indirect infringement of the Asserted Patents. Second Am. Compl. Because the Court accepts that a complaint is sufficient for post-suit knowledge when superseded by an amended complaint, Plaintiff's Complaint and Amended Complaint provided sufficient notice to support a post-suit indirect infringement claim. Accordingly, the Court concludes that Plaintiff's Second Amended Complaint provided sufficient allegations of indirect infringement. Defendant's Third Motion to Dismiss is denied.

Court No. 1:23-cv-00160                                                    Page 23

## CONCLUSION

Upon consideration of Defendant's Third Motion to Dismiss (D.I. 68), and

all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Third Motion to Dismiss (D.I. 68) is denied.

IT IS SO ORDERED this 23rd day of July, 2026.

                                        /s/ Jennifer Choe-Groves
                                        Jennifer Choe-Groves
                                        U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.